1              UNITED STATES DISTRICT COURT

2                  DISTRICT OF ARIZONA

3

4   United States of America,    )
                                 )
5                 Plaintiff,     )
                                 )
6   vs.                          )   CR-21-00655-TUC-JGZ-EJM
                                 )
7   Luis Manuel Bray-Vazquez,    )
                                 )
8                 Defendant.     )   Tucson, Arizona
    _____)   August 24, 2021
9

10

                     TRANSCRIPT OF SENTENCING
11          BEFORE THE HONORABLE JENNIFER G. ZIPPS
                   UNITED STATES DISTRICT JUDGE
12

13  For the Plaintiff:
         Ms. Angela W. Woolridge
14       U.S. Attorney's Office
         405 West Congress Street, Suite 4800
15       Tucson, AZ  85701

16  For the Defendant:
         Mr. Jamiel Allen
17       Federal Public Defender's Office
         407 West Congress Street, Suite 501
18       Tucson, AZ  85701

19  Interpreter:
         Ms. Hortensia Studer
20

21

22  Proceedings recorded by mechanical stenography, transcript
    produced by computer.
23
                     Aaron H. LaDuke, RMR, CRR
24            Federal Official Court Reporter
                    405 W. Congress St.
25              Tucson, Arizona  85701

P R O C E E D I N G S

THE CLERK:  In criminal matter 21-655, United States of America versus Luis Manuel Bray-Vazquez, on for sentencing.

Counsel, please state your appearances.

MS. WOOLRIDGE:  Good afternoon, Your Honor.  Angela Woolridge appearing on behalf of the United States.

THE COURT:  Good afternoon.

MR. ALLEN:  Good afternoon, Your Honor.  Jamiel Allen appearing on behalf of Luis Manuel Bray-Vazquez.  He is appearing via video with his consent, and I would request consent for me to appear telephonically based on the news of an office shutdown last week and indirect COVID exposure.

THE COURT:  All right.  Thank you.  Good afternoon, Mr. Allen.

Good afternoon, Mr. Bray.

THE DEFENDANT (Through interpreter):  Good afternoon, ma'am.

THE COURT:  Mr. Bray, you do have a right to be present here in court for a sentencing hearing, but currently we're not transporting people to court because of the health crisis.  Did you speak with Mr. Allen about appearing today via video conference?

THE DEFENDANT (Through interpreter):  Yes, ma'am.

THE COURT:  And are you consenting to going forward via video conference?

1          THE DEFENDANT (Through interpreter):  Let's go

2   forward, please.

3          THE COURT:  And Mr. Allen, was he able to explain to

4   you that he's going to appear via telephone today because of a

5   coronavirus exposure at his office?

6          MR. ALLEN:  Your Honor, I was not able to communicate

7   that with Mr. Bray.  My last meeting with him was prior to the

8   notification on Friday.

9          THE COURT:  All right.  Thank you, Mr. Allen.

10      So, Mr. Bray, your attorney would normally be here in

11  court, but his office, there was an exposure at their office,

12  so he's requested to appear at your hearing telephonically.

13  Do you consent to his appearance via telephone?

14         THE DEFENDANT (Through interpreter):  Yes, all right.

15  Thank you.

16         THE COURT:  All right.  Thank you.

17      Because your attorney is not here, let me ask those in

18  the courtroom, are you here on Mr. Bray's behalf?

19      All right.  Does anyone need a headset to hear an

20  interpretation?

21      No.  All right.  Thank you.

22      So, Mr. Bray, you do have some family members that are

23  here for the hearing as well.

24      Mr. Allen, did you review the presentence investigation

25  report with Mr. Bray?

1       MR. ALLEN:  Yes, Your Honor.

2       THE COURT:  Mr. Bray, have you been satisfied with

3  the services of your attorney?

4       THE DEFENDANT (Through interpreter):  Yes, ma'am.

5  Thank you.  Yes.

6       THE COURT:  Mr. Bray, you pled guilty to the charge

7  of smuggling goods from the United States; and based on your

8  plea, the Court finds you guilty in violation of 18, United

9  States Code, Section 554(a).

10      I'm going to adopt the guideline calculations that are

11  set forth in the presentence investigation report.  There were

12  no objections filed to that report.  The Court finds that the

13  advisory sentencing guideline range is 46 to 57 months of

14  imprisonment.

15      I have reviewed the sentencing memoranda that were filed

16  by each of the parties.  I've also reviewed the letters that

17  were submitted on Mr. Bray's behalf.  I note that the parties

18  indicated in their filings that there is an oral agreement for

19  a one-level reduction for early disposition -- or, I'm sorry,

20  for waiver of the indictment, and that results in an advisory

21  guideline range of 41 to 51 months.  The Court will accept the

22  parties' agreement as to that matter.

23      Mr. Allen.

24      MR. ALLEN:  Thank you, Your Honor.  Just to reiterate

25  our request for the 27-month sentence, we would ask for

1  an additional variance and the Court's consideration, and we

2  submit that under these particular circumstances it would be

3  warranted.

4      Mr. Bray, he's known by his friends to be a very

5  responsible, hardworking individual.  He didn't have a

6  terrible childhood or difficult upbringing, necessarily; but

7  he did grow up, as explained in my memorandum, around,

8  unfortunately, nefarious actors and conduct.

9      He has an outpouring of family support exhibited by the

10  letters.  I don't know exactly which family members came

11  today.  I know for a fact one of them is a sister because she

12  had advised me she was coming, and it also sounds like

13  additional family members did come in support of him.  I would

14  ask the Court to consider that in addition to the letters and

15  the people who came out to visit him.  It's a testament to

16  this being aberrant behavior and aberrant conduct on his

17  behalf.

18      He's an individual who was essentially rising through the

19  ranks and had what appears to me to be a promising, you know,

20  career and future.  He was sort of hitting his stride in

21  connection to employment, family, taking care of his own

22  children.  He does have those parental responsibilities that

23  he took seriously and those obligations.

24      It's difficult to really pin down exactly how he got

25  involved with this particular conduct and the transportation

of the firearms. He definitely recognizes and acknowledges
the impact that it has not only on his own country but just
the fact that it was, you know, unlawful behavior that caused
great harm to the community at large or had the potential to.

And I think it's also -- but it's also difficult for
maybe us to recognize or at least comprehend and understand
the nervous and confused and difficult situation that he found
himself in, where he had taken steps not really knowing how to
get himself out of. It wasn't a situation or circumstances
that was driven by greed or some other kind of desire to be
involved with individuals. He was an individual who started
down a -- took a bad step and could not figure out how to
reverse it himself, and it got reversed when he got arrested.

I think that his employment history, his family history,
his family responsibilities, and also the certificates of
recognition that we submitted indicate that he is a very low
risk to recidivate and that this character was out of
conduct -- out of character and aberrant; and the family ties
and the dependents that he has sort of reinforce the arguments
that we're submitting to the Court today.

So for those reasons, Your Honor, and also the final
reason, Mr. Bray's at least effort at some over acceptance
postarrest, would be reasons why we'd ask the Court to
consider an additional variance and impose a sentence of no
more than 27 months.

1          THE COURT:  All right.  Thank you, Mr. Allen.

2      Mr. Bray, this is your opportunity to say anything you

3  want the Court to consider.

4          THE DEFENDANT (Through interpreter):  First of all,

5  thank you for allowing me to speak in your courtroom.  I am

6  very sorry.  I'm very ashamed for my actions.  I want

7  to apologize to you, to society, and to the two countries that

8  I offended with my actions.  That was never my way of life.  I

9  was desperate and I made the wrong decision due to my nerves,

10  I was nervous.

11      I understand the seriousness of the situation, and I dare

12  ask for clemency, leniency with my sentence, more than

13  anything for the sake of my wife, my daughters, my mother, and

14  my family.  They are the ones that are suffering with me, and

15  because of me, this painful correction.  I never thought that

16  I would learn the true meaning of life in jail, and I can

17  assure you the man you're sentencing today is very different

18  from the one who was arrested.

19      I ask you for leniency, and I thank you and the attorney

20  and the probation officer and anybody that was involved in my

21  case.  I thank my family for coming, and I thank everybody,

22  and may God bless everybody and may God bless America.  Thank

23  you.

24          THE COURT:  Thank you, Mr. Bray.

25      Ms. Woolridge.

1     MS. WOOLRIDGE:  Thank you, Your Honor.

2        As the government has set out in its sentencing

3  memorandum, we are recommending a sentence of 46 months, no

4  less than 46 months imprisonment in this case.  That

5  represents the middle of the guideline range after granting

6  the additional level of reduction for the defendant's waiver

7  of his right to indictment and plea to an information in this

8  case.  It is also the recommendation by the Probation

9  Department, and I believe that there are a number of

10  circumstances in this case that weigh against an argument for

11  a departure or variance.  We do not believe that it is

12  appropriate.  We agree with the Probation Department,

13  especially when considering some of the very egregious

14  aggravating factors in this case.

15        First of all, the offense itself is a very serious

16  offense.  This is involving the smuggling of several

17  high-powered semiautomatic assault firearms, including a

18  Barrett .50 caliber rifle, on multiple occasions.  This was

19  not one-time aberrant conduct, Your Honor, but it occurred on

20  several, several separate instances, which shows that the

21  defendant had an opportunity to reflect on the severity of his

22  actions and the harm that it caused and the illegality of his

23  conduct, but he nonetheless chose to engage in this repeated

24  conduct several times.

25        The amount of harm that has already been caused and can

still be caused and will be caused in the future by the
weapons that the defendant did successfully smuggle into
Mexico really is staggering, and he's doing this on behalf of
a criminal organization. These organizations don't use these
weapons for anything but harm as well as promoting their other
crimes.

And so, Your Honor, I think that the sentence does need
to be significant in this case to reflect the severity of the
offense, especially when considering the specific type of
weapons that were being smuggled, I think more serious than
some of the other cases we see of this nature.

What is especially concerning, Your Honor, with regard to
the danger that he caused others is that the defendant
attempted to flee through the port of entry and caused great
risk of harm to the officers that were working in the port of
entry when they were simply doing their job. Fortunately, no
one was hurt, but this was a case where the defendant came so
close to striking one of the officers as he attempted to flee
that had he not swerved, he would have easily hit and struck
the officer. So, Your Honor, the risk of his flight or
attempted flight further exacerbates the severity of this
charge.

The defendant was employed at the United States Consulate
and abused his employment, his ability to cross easily from
Mexico into the United States and back into Mexico while

committing his crimes.  He was using a consular vehicle, no

doubt in an attempt to escape detection or avoid inspection.

Your Honor, that's very concerning.  I think it's abuse

of a position of trust.  It's also an abuse of his particular

employment with regard to here's someone who is probably more

aware even than the average person about the importance of

preventing this type of conduct, the harm that smuggling

weapons into Mexico from the United States can cause both

countries and the international relationship between the

countries as well as just the specific harm it can cause

citizens of both countries that are put in the path of this

destruction and of these violent type of crimes, these deadly

weapons.

So if anyone, Your Honor, the defendant should have known

and recognized the severity of his conduct but instead used

his position and abused his position to commit these offenses.

And he committed them out of greed, Your Honor.  He was

gainfully employed.  He had, as his attorney points out, a

good and promising career.  He could have been just fine

financially.  He could have provided for his family had he

just avoided this repetitive and serious criminal conduct, but

he committed it out of greed, Your Honor.  His claims of

having fear turned out to be unsubstantiated, but instead he

was paid each time he unlawfully smuggled these weapons into

Mexico.

1    Your Honor, we do believe that all of these aggravating

2  factors weigh against any downward variance or departure, and

3  we do believe a sentence of 46 months is appropriate in this

4  case.

5         THE COURT:  Thank you, Ms. Woolridge.

6    I have considered the information presented and the

7  3553(a) factors.  I note that Mr. Bray has family support and

8  that he has accepted responsibility.  However, given the

9  circumstances of the offense, I am going to deny the request

10 for a variance.

11   In addition to the seriousness of the offense, there are

12 the circumstances of the offense where Mr. Bray attempted to

13 flee outbound, in the outbound lanes, into Mexico and created

14 a danger to officers at the port of entry.  He knew that he

15 was buying, or I should say transporting weapons for a drug

16 trafficking organization.  He abused his position with the

17 U.S. Consulate.  He betrayed his employer and his country

18 by allowing these weapons to travel into Mexico, and it

19 occurred on more than one occasion.  So with those facts, the

20 Court does not believe that a variance is appropriate.

21   I'm going to order, Mr. Bray, in light of the 3553(a)

22 factors, that you be committed to the Bureau of Prisons for 46

23 months.

24   There is a mandatory $100 special assessment you'll be

25 required to pay.

1    The Court finds you don't have the ability to pay a fine,

2  and I'll order that a fine be waived.

3    Upon your release, I'm going to order that you be placed

4  on a term of supervision for 36 months.  During that term of

5  supervision, you'll be required to comply with the standard

6  conditions of supervision adopted by the Court in General

7  Order 17-18, including the condition that you not commit

8  another crime.

9    I'm also going to impose a special condition that you not

10  return to the United States without permission to do so.

11    Ms. Woolridge, are there any forfeiture issues?

12    MS. WOOLRIDGE:  No, Your Honor, there are not.  Thank

13  you.

14    THE COURT:  Mr. Bray, do you understand your

15  sentence?

16    THE DEFENDANT (Through interpreter):  Yes, ma'am.

17  Thank you.

18    THE COURT:  There is no waiver of appeal rights

19  either, correct, in the oral agreement, Ms. Woolridge?

20    MS. WOOLRIDGE:  No, Your Honor.  The only

21  oral agreement has to do with the additional level.

22    THE COURT:  All right.  So, Mr. Bray, if you believe

23  that the Court has made an error, you do have a right of

24  appeal.  To preserve your appeal rights, you would be required

25  to file a notice of appeal within 14 days of today's date.

1   Counsel would be appointed to represent you during the appeal

2   process.

3        Mr. Bray, do you understand your appeal rights?

4        THE DEFENDANT (Through interpreter):  Yes, I

5   understand, ma'am.

6        THE COURT:  Mr. Bray, do you have any questions?

7        THE DEFENDANT (Through interpreter):  No.  Thank you

8   very much and may God bless you.

9        THE COURT:  Mr. Allen, is there anything further?

10        MR. ALLEN:  Nothing further from the defense.

11        THE COURT:  Anything further from the government?

12        MS. WOOLRIDGE:  No, Your Honor.  Thank you.

13        THE COURT:  All right.  Thank you.

14       Good luck to you, Mr. Bray.  You can go ahead and knock

15   on the door behind you, and they'll let you back into the

16   facility.  Thank you.

17        THE DEFENDANT (Through interpreter):  Thank you.

18       (Court recessed.)

19

20

21

22

23

24

25

1     C E R T I F I C A T E

2

3          I, Aaron H. LaDuke, do hereby certify that I

4  reported the foregoing proceedings to the best of my skill

5  and ability, and that the same was transcribed by me via

6  computer-aided transcription, and that the foregoing pages

7  of typewritten matter are a true, correct, and complete

8  transcript of all the proceedings had, as set forth in the

9  title page hereto.

10          Dated this 7th day of October, 2021.

11

12

13                    _____s/Aaron H. LaDuke_____
                      Aaron H. LaDuke, RMR, CRR
14                    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25